CAYUGA CORPORATION, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Cayuga Corp. v. Commissioner
Docket No. 5665-75.
United States Tax Court
T.C. Memo 1977-332; 1977 Tax Ct. Memo LEXIS 110; 36 T.C.M. (CCH) 1333; T.C.M. (RIA) 770332; September 26, 1977, Filed Drew R. Tillotson and John A. McGarvey, for the petitioner. Albert B. Kerkhove, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND *111 OPINION HALL, Judge: Respondent determined a $45,250.58 deficiency in petitioner's income tax for its taxable year ending August 31, 1971.
Other issues having been conceded by the parties, the sole issue remaining before us is whether there was a satisfaction or disposition of petitioner's installment sales obligation, thereby triggering immediate recognition of gain under section 453(d). [1]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner is a corporation organized under the laws of the State of Iowa. At the time petitioner filed its petition, its principal place of business was in Des Moines, Iowa. John G. Graham ("Graham"), an individual experienced in banking and real estate, incorporated petitioner [2] in September 1964 to engage in equipment leasing. Graham served as petitioner's president. At the time of incorporation, Graham and his wife, in a transaction qualifying for non-recognition treatment under section 351, transferred three apartment buildings to petitioner in exchange for 100 percent of its stock. One *112 of the three buildings transferred to petitioner, the Boekenhoff apartment building, was transferred subject to a mortgage dated January 12, 1962 and held by United Federal Savings and Loan Association ("United Federal"). m2 In order to carry on its business, petitioner borrowed money from several banks taking liens on the buildings. These banks later requested that Graham personally guarantee petitioner's loans. The banks no longer wanted the apartment buildings as security for their loans. To satisfy the banks, Graham substituted his personal guarantee in lieu of the three buildings as security for petitioner's loans, and petitioner, on April 1, 1969, agreed to sell the three apartment buildings to Graham. The sale of each building was memorialized in a separate contract. Under the Boekenhoff contract of sale, Graham agreed to pay petitioner a total of $175,517.45, payable *113 as follows: (a) $108,261.77 in monthly installment payments of $775.70 or more at the option of the buyer [Graham], said payments to be made on or before the 1st day of April, 1969, and on or before the first day of each and every month thereafter until March 1, 1989, or until all sums due under this contract are paid in full; said monthly installment payments of $775.70 include interest on the unpaid balance at the rate of six per cent (6%) per annum; said payments to be applied first to the interest then unpaid and next on the balance of the principal, and (b) Monthly payments equal in amount to the payment required to be made by Leasing, Inc. [petitioner], under the mortgage dated June 14, 1962 (sic), held by United Federal Savings & Loan Association * * *, said payments to be made on or before the     day of April, 1969, and on or before the     day of every month thereafter until all sums due under said mortgage are fully paid. Upon Graham's final payment, petitioner was to convey the Boekenhoff to Graham in fee simple under a special warranty deed. In the event Graham failed to make the necessary payments or failed to perform certain other covenants, petitioner's *114 sole remedy was "a forfeiture and cancellation of this contract as provided by Chapter 656, Code of Iowa (1966) and Buyer [Graham] shall in no event be personally liable for any default or failure to perform under this contract." For bookkeeping purposes, petitioner recorded the payments it received from Graham in two separate accounts, one representing the mortgage payments due United Federal and the second representing the other (equity) monthly payments. For the taxable year ending August 31, 1969, petitioner elected the installment method of reporting its gain on the sale of the Boekenhoff, pursuant to section 453. In early 1971, petitioner sold its leasing business for approximately $300,000 in cash. As a result, petitioner thereafter held merely cash and short-term and long-term obligations. After the sale of its leasing business, Graham began borrowing funds from petitioner, with an intitial withdrawal of $100,000. Petitioner recorded its loans to Graham in a separate account. By August 31, 1971, Graham's borrowings had reached $300,312.59. Although he did not repay the loans on a fixed schedule, by August 31, 1974, he had repaid the total sum owed petitioner. *115 On April 26, 1971, Iowa Realty Co., Inc. ("Iowa Realty") purchased the Boekenhoff from Graham for $150,000 in cash. On that date, Graham's overall liability to petitioner under the 1969 sale of the Boekenhoff was $152,487.55. Petitioner's remaining liability on the United Federal mortgage at this time was approximately $48,000. Graham considered the sale advantageous because the Boekenhoff was located in a declining area of Des Moines and because Iowa Realty was willing to pay cash. Graham signed the purchase agreement in his individual capacity.However, the agenda for the closing provided by Iowa Realty, which included itemized closing charges and credits, used petitioner's name and was signed "Cayuga Corp. by John G. Graham, Pres." Petitioner conveyed title by warranty deed to Iowa Realty, which then recorded the deed. At closing, Iowa Realty made two payments on the Boekenhoff. The first was to United Federal in satisfaction of the January 12, 1962 mortgage. The net sales proceeds left after paying off the balance of the mortgage and the other closing costs was $96,540.98. Iowa Realty paid this amount to petitioner by check, dated June 2, 1971, Petitioner deposited the *116 check in its bank account on the same day. Also on June 2, 1971, petitioner advanced funds to Graham totaling $90,000. [3] Within the next ten days, petitioner advanced to Graham or made payments on his behalf totaling $5,164.23. Petitioner entered the Iowa Realty sale and discharge of the United Federal mortgage on its books in the following manner: (1) The account representing the mortgage balance was closed out by a debit in the amount of the mortgage balance, and a corresponding credit was made to the asset account which represented advances to Graham; (2) as a temporary expedient pending year-end assistance from petitioner's outside accountant, petitioner's bookkeeper credited the net sales proceeds to a clearing account; (3) when closing petitioner's books for the fiscal year ending August 31, 1971, petitioner's accountant debited the clearing account by the amount of the net sales proceeds and credited the account representing advances to Graham. Petitioner's accountant was *117 not an expert in tax matters and gave no consideration to tax consequences.Although the accountant discussed these matters with Graham, Graham was not aware that any tax consequences followed from the 1971 Boekenhoff sale. After petitioner deeded the Boekenhoff to Iowa Realty, Graham considered he had a moral obligation to pay petitioner the amount due under the 1969 installment sales contract. As of June 1971, Graham's net worth was approximately $2,400,000. Subsequent to the 1971 sale of the Boekenhoff, Graham discontinued making periodic mortgage payments on his 1969 obligation. The 1969 contract of sale between petitioner and Graham had required Graham to make payments to petitioner in relation to the mortgage only while the mortgage was undischarged. Even though Iowa Realty had discharged the mortgage, Graham, in April 1973, paid to petitioner an amount which would have been sufficient to discharge the mortgage if it had still been outstanding. Graham continued making the other (equity) monthly payments on his 1969 obligation until January 31, 1973, at which time he ceased making payments until August 31, 1974. During Graham's periods of nonpayment, petitioner made no *118 efforts at collection. For the tax years ended August 31, 1972, 1973, 1974 and 1975, petitioner reported gain on its Federal corporate income tax returns attributable to the 1969 installment sale of the Boekenhoff of $2,843.10, $2,369, $11,930 and $20,000, respectively. Petitioner, on its Federal corporate income tax return for the tax year ended August 31, 1971 (the year in issue), reported the receipt of $3,877.15 from the 1969 installment sale of the Boekenhoff. Respondent in his statutory notice of deficiency determined, inter alia, that there was a satisfaction or disposition of petitioner's installment contract in the taxable year 1971, thereby triggering immediate recognition of the as yet unreported gain. OPINION In 1964 John Graham transferred three apartment buildings, including one known as the Boekenhoff, to petitioner, his controlled corporation. Petitioner accepted the Boekenhoff subject to a mortgage held by United Federal Savings and Loan Association ("United Federal"). In 1969 petitioner sold the Boekenhoff back to Graham on the installment sales basis pursuant to section 453. At the time of the 1969 sale, the parties agreed that petitioner would continue *119 to make the payments on the United Federal mortgage and would retain title to the Boekenhoff until Graham completed payment of the purchase price. In 1971 Graham sold the Boekenhoff to Iowa Realty Co., Inc. ("Iowa Realty"), an unrelated third party, for $150,000. As part of the sale, Iowa Realty paid directly to United Federal the remaining amount due under the mortgage and made out a check to petitioner for the remainder of the purchase price, which check petitioner deposited in its bank account. The amount deposited in the bank account was not credited to Graham's liability on the installment sales contract, but instead was credited to his advances account, reducing his personal liability to petitioner. After the sale of the Boekenhoff, most of the sales proceeds after payment of the mortgage (net sales proceeds) were paid by petitioner to Graham, and his personal liability to petitioner was increased on petitioner's books. Section 453 permits a taxpayer selling property on an installment sales contract to report gain as installment payments are received.Because section 453 is a relief provision, an exception to the general rule of reporting taxable income in the taxable year *120 realized, it must be strictly construed. Smith v. Commissioner,56 T.C. 263, 284 (1971); Pozzi v. Commissioner,49 T.C. 119, 127 (1967). Section 453(d)(1) provides: (d) Gain or Loss on Disposition of Installment Obligations.-- (1) General rule.--If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and-- (A) the amount realized in the case of satisfaction at other than face value or a sale or exchange, or (B) the fair market value of the obligation at the time of distribution, transmission, or disposition, in the case of the distribution, transmission, or disposition otherwise than by sale or exchange. Respondent contends that there was a satisfaction or disposition of petitioner's installment contract in 1971. His primary argument is that the net effect of Graham's sale of the Boekenhoff to Iowa Realty is a satisfaction or disposition of the installment obligation composed of (1) the discharge of petitioner's liability under the United Federal mortgage and (2) the *121 delivery to petitioner of the remaining sales proceeds due it under the 1969 sale. These two financial benefits, respondent asserts, constitute a satisfaction or disposition. We will first consider the effect of Iowa Realty's payment to United Federal in discharge of the mortgage on the Boekenhoff. At the time of Iowa Realty's payment, petitioner still possessed the obligation to make monthly mortgage payments to United Federal and still retained legal title to the Boekenhoff. When Iowa Realty discharged the United Federal mortgage, petitioner was financially benefitted because it no longer had to make the monthly payments on the mortgage. Further, the discharge freed petitioner of its legal responsibilities as primary obligor on the United Federal mortgage. It no longer had to be concerned about the potential adverse financial consequences, such as foreclosure, which can result under Iowa law when the party primarily liable under a mortgage defaults. Cf. Iowa Code Ann. secs. 654.1-654.12 (West, 1950). We therefore conclude that the petitioner received both financial and legal benefits through Iowa Realty's discharge of the United Federal mortgage. *122 We further conclude that such benefits amount to payments actually received in 1971, within the meaning of section 453. Petitioner contends that, even if Iowa Realty's payment on the mortgage benefitted petitioner, such benefit should have no tax consequences because petitioner, for income tax purposes, treated any payments it had earlier received from Graham on the mortgage as a recovery of its basis.Petitioner asserts that the discharge of the mortgage was merely further recovery of basis. Petitioner adds that respondent did not in the past object to this treatment.Petitioner's past practice concerning the treatment of these payments does not alter the relevant law. Nor does alleged past acquiesence by respondent in questions of law raise an estoppel. Wiles v. United States,312 F. 2d 574, 577-578 (10th Cir. 1962); Municipal Bond Corporation v. Commissioner,41 T.C. 20, 31-32 (1963), revd. on other grounds 341 F. 2d 683 (8th Cir. 1965). Instead section 453 mandates how payments are to be treated, regardless of whether the payment is intended by the parties to apply to equity or to the mortgage. And these provisions require an inclusion *123 in income of a portion of the realized gain as each installment is received, rather than a deferral of gain until basis is recovered. Section 453(a). We next turn to the 1971 check for $96,540.98 which Iowa Realty made out to petitioner, representing the excess of the purchase price over the mortgage. Respondent contends that petitioner received these funds unconditionally, thus the payment amounted to a receipt of the remaining balance of the 1969 installment obligation. Petitioner, on the contrary, asserts that the parties to the 1971 sale intended for Graham to receive the net sales proceeds and that it was the merest inadvertence that led to the check going to petitioner. We do not agree with petitioner's view of the facts. Petitioner's sole security under the installment sales contract was title to the Boekenhoff. It transferred title to Iowa Realty upon Iowa Realty's satisfaction of the mortgage and payment to it of the net sales proceeds.After transfer of title to the apartment, the installment sales contract (if not satisfied) would have been worthless.Graham testified that he felt a moral obligation to pay off the installment contract. We conclude that the contract *124 was satisfied by receipt of the net sales proceeds by petitioner who thereafter deposited the proceeds in its bank account. Petitioner's argument is based primarily on petitioner's bookkeeping entries. After depositing the net sales proceeds in its bank account, petitioner credited Graham's advances account rather than Graham's obligation under the installment contract. When petitioner paid an amount equal to the net sales proceeds over to Graham, petitioner increased Graham's advances account. We are not persuaded by these bookkeeping entries that the payment of the net sales proceeds was not intended to satisfy petitioner's installment contract.If not, there would have been no motivation for petitioner to give up its security under the contract by deeding title to the Boekenhoff to Iowa Realty. After payment of the net sales proceeds to Graham, Graham no longer made installment payments in the amounts or at the times required under the installment contract. Instead Graham made irregular payments in irregular amounts to petitioner at his convenience. This pattern was similar to his prior and subsequent pattern for paying his loans from petitioner. Decision will be entered *125 under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the year in issue.↩
2. Petitioner has undergone a number of name changes. For its first few months, it was know as Lessors, Inc. Thereafter its name was changed to Leasing, Inc. In 1971 its name was changed to Cayuga Corporation. We shall disregard its many transformations and refer to it simply as petitioner.↩
3. The actual payees of the checks drawn by petitioner ("Graham Realty" and "Graham Investment") were merely labels of convenience attached to activities carried on by Graham as an individual.↩